<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ERIC HINES,                         :
                                    :    Civil Action No. 10-2850 (NLH)
            Plaintiff,              :
                                    :
            v.                      :    **OPINION**
                                    :
DET. WHALEN #77, et al.,            :
                                    :
            Defendants.             :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Eric Hines
East Jersey State Prison
Lock Bag R
Rahway, NJ 07065

**HILLMAN**, District Judge

     Plaintiff Eric Hines, a prisoner confined at East Jersey State Prison in Rahway, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint and Amended Complaint.

     At this time, the Court must review the Complaint and Amended Complaint to determine whether they should be dismissed

as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because they seek monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and Amended Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that he was arrested and questioned after a victim reported being attacked by a light-skinned black male. Plaintiff alleges that he was questioned by Detective C. Campbell,[1] and that the interrogation was "inconclusive." Plaintiff alleges that there was no probable cause for his arrest on this charge, that he was arrested because he was a black man in a white neighborhood.

Plaintiff alleges that Detective Whalen, Detective Kirk Earney, and Officer Bishop pulled him out of custody at Camden County Correctional Facility to the Haddonfield, New Jersey, police barracks, where they choked and beat Plaintiff. Plaintiff alleges that when he refused to provide DNA evidence, these police officers punched and kicked him until he was unconscious and bleeding. He alleges that his DNA was taken while he was unconscious. He also alleges that the DNA evidence was "inconclusive." Plaintiff alleges that Patrolman Ronald Aron was

_____

[1] Detective Campbell is not named as a defendant.

a co-conspirator to these events.  Plaintiff also alleges that these police officers falsified reports.

Plaintiff alleges that the Office of the Prosecutor of Camden County and prosecutors Warren Faulk, Michele Morgera, and Lauren Pratter presented the case to the grand jury, even though there was not probable cause to believe that he had committed the crime, and that these prosecutors brought forth Detective Whalen to lie to the grand jury, which led to Plaintiff's indictment.

Plaintiff alleges that his trial counsel Jill Cohen provided ineffective assistance by, among other things, failing to pursue a motion to suppress evidence and failing to challenge the identification evidence against Plaintiff.  Plaintiff alleges that if his counsel had pursued the various pre-trial motions the outcome of the trial would have been different.

Plaintiff names as defendants all of the above mentioned individuals, with the exception of Detective Campbell, as well as the State of New Jersey.[2]  He seeks monetary damages and immediate release.[3]  He has asked for appointment of counsel.

---

[2] The State of New Jersey is immune, through the Eleventh Amendment to the U.S. Constitution, from suit in federal court. Accordingly, all claims against the State of New Jersey will be dismissed without prejudice for lack of jurisdiction.

[3] It appears that Plaintiff was a pre-trial detainee at the time that he submitted the original Complaint and that he was convicted and sentenced by the time he submitted the Amended Complaint.  The New Jersey Department of Corrections Inmate Locator reflects that Plaintiff was sentenced on August 6, 2010, on charges including robbery, burglary, and resisting arrest.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a

---

See https://www6.state.nj.us/DOC_Inmate/details?x=1009808&n=0 . As Plaintiff is now a convicted and sentenced prisoner, any action for release from confinement must be brought as a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, following exhaustion of state remedies.

complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking

for plausible grounds to infer an agreement does not
impose a probability requirement at the pleading stage;
it simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence of
illegal agreement.  And, of course, a well-pleaded
complaint may proceed even if it strikes a savvy judge
that actual proof of those facts is improbable, and
"that a recovery is very remote and unlikely." ...  It
makes sense to say, therefore, that an allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice.  Without more, parallel conduct does
not suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory. ...

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to

the antitrust context").

Context matters in notice pleading.  Fair notice under
Rule 8(a)(2) depends on the type of case -- some
complaints will require at least some factual
allegations to make out a "showing that the pleader is
entitled to relief, in order to give the defendant fair
notice of what the ... claim is and the grounds upon
which it rests."  Indeed, taking <u>Twombly</u> and the
Court's contemporaneous opinion in <u>Erickson v. Pardus</u>,
127 S.Ct. 2197 (2007), together, we understand the
Court to instruct that a situation may arise where, at
some point, the factual detail in a complaint is so
undeveloped that it does not provide a defendant the
type of notice of claim which is contemplated by
Rule 8.  Put another way, in light of <u>Twombly</u>, Rule
8(a)(2) requires a "showing" rather than a blanket
assertion of an entitlement to relief.  We caution that
without some factual allegation in the complaint, a
claimant cannot satisfy the requirement that he or she
provide not only "fair notice," but also the "grounds"
on which the claim rests.

<u>Phillips</u>, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when

assessing the sufficiency of any civil complaint, a court must

distinguish factual contentions -- which allege behavior on the

part of the defendant that, if true, would satisfy one or more

elements of the claim asserted -- and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory

statements."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation."  <u>Id.</u> at 1950.  Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  <u>Id.</u>

Therefore, after <u>Iqbal</u>, when presented with a
motion to dismiss for failure to state a claim,
district courts should conduct a two-part analysis.
First, the factual and legal elements of a claim should
be separated.  The District Court must accept all of
the complaint's well-pleaded facts as true, but may
disregard any legal conclusions.  Second, a District
Court must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff
has a "plausible claim for relief."  In other words, a
complaint must do more than allege the plaintiff's
entitlement to relief.  A complaint has to "show" such
an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d
at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
"[w]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Rule 10(b) of the Federal Rules of Civil Procedure provides:

A party must state its claims ... in numbered
paragraphs, each limited as far as practicable to a
single set of circumstances.  ...  If doing so would
promote clarity, each claim founded on a separate
transaction or occurrence ... must be stated in a
separate count or defense.

Rule 18(a) controls the joinder of claims.  In general, "[a]

party asserting a claim ... may join as independent or

alternative claims, as many claims as it has against an opposing

party."

Rule 20(a)(2) controls the permissive joinder of defendants

in pro se prisoner actions as well as other civil actions.

8

> Persons ... may be joined in one action as defendants
> if:
>> (A) any right to relief is asserted against them
>> jointly, severally, or in the alternative with respect
>> to or arising out of the same transaction, occurrence,
>> or series of transactions or occurrences; <u>and</u>
>> (B) any question of law or fact common to all
>> defendants will arise in the action.

(emphasis added).  <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252
Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th
Cir. 2007).

In actions involving multiple claims and multiple
defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a),
> plaintiff may join multiple defendants in a single
> action only if plaintiff asserts at least one claim to
> relief against each of them that arises out of the same
> transaction or occurrence and presents questions of law
> or fact common to all.  If the requirements for joinder
> of parties have been satisfied, however, Rule 18 may be
> invoked independently to permit plaintiff to join as
> many other claims as plaintiff has against the multiple
> defendants or any combination of them, even though the
> additional claims do not involve common questions of
> law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane,
<u>Federal Practice and Procedure</u>, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be
liberally construed in the interest of convenience and judicial
economy.  <u>Swan v. Ray</u>, 293 F.3d 1252, 1253 (11th Cir. 2002).
However, the policy of liberal application of Rule 20 is not a
license to join unrelated claims and defendants in one lawsuit.
<u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252 Fed.Appx. 436 (3d Cir.

2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007); <u>Coughlin v.</u>
<u>Rogers</u>, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground
for dismissing an action.  Instead, a court faced with a
complaint improperly joining parties "may at any time, on just
terms, add or drop a party.  The court may also sever any claims
against a party."

Where a complaint can be remedied by an amendment, a
district court may not dismiss the complaint with prejudice, but
must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34
(1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d
Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane</u>
<u>v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal
pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg</u>
<u>County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.   <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

IV.  <u>ANALYSIS</u>

A.  <u>Racial Profiling/Arrest Without Probable Cause</u>

Plaintiff alleges that there was not probable cause for his arrest and that he was arrested because he was a black man in a white neighborhood.

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable

11

under § 1983.  See Walmsley v. Philadelphia, 872 F.2d 546 (3d
Cir. 1989)(citing cases); see also, Albright v. Oliver, 510 U.S.
266, 274 (1994)(a section 1983 claim for false arrest may be
based upon an individual's Fourth Amendment right to be free from
unreasonable seizures).  Under New Jersey law, false arrest has
been defined as "the constraint of the person without legal
justification." Ramirez v. United States, 998 F. Supp. 425, 434
(D.N.J. 1998) (quoting Fleming v. United Postal Service, Inc.,
604 A.2d 657, 680 (N.J. Law Div. 1992)).

    To state a Fourth Amendment claim for false arrest, a
plaintiff must allege two elements:  (1) that there was an
arrest; and (2) that the arrest was made without probable cause.
Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir.
1988).  To establish the absence of probable cause, a plaintiff
must show "that at the time when the defendant put the
proceedings in motion the circumstances were such as not to
warrant an ordinary prudent individual in believing that an
offense had been committed." Lind v. Schmid, 67 N.J. 255, 262
(1975).  "Probable cause . . . requires more than mere suspicion;
however, it does not require that the officer have evidence to
prove guilt beyond a reasonable doubt." Orsatti v. New Jersey
State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).  Rather,
probable cause exists when the facts and circumstances are
"sufficient to warrant a prudent man in believing that the

defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).

Moreover, here Plaintiff alleges that the arrest was based on an improper racial motive - that he was arrested because he was a black man in a white neighborhood.  To establish such a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) "that this selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor, ... or to prevent the exercise of a fundamental right.'" Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir.2005) (quoting Holder v. City of Allentown, 987 F.2d 188, 197 (3d Cir.1993)).

Finally, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. Manalapan, 47 F.3d 628, 636 (3d Cir. 1995); Palma v. Atlantic County, 53 F. Supp. 2d 743, 755 (D.N.J. 1999)(citing Groman).  See also Anela v. City of Wildwood, 595 F. Supp. 511, 512 (D.N.J. 1984)(holding a person for any length of time without legal justification may be a violation of the right to liberty

13

under the Fourteenth Amendment and thus states a claim of false imprisonment under § 1983).[4]

Here, the facts alleged are not sufficient to raise Plaintiff's alleged right to relief above a speculative level. He does not state a claim for selective enforcement because he states that the victim described her attacker as a black man.  He provides no other details as to the circumstances of his arrest, but merely asserts the legal conclusion that he was arrested without probable cause.  The allegations are too lacking in facts to state a claim for false arrest or selective enforcement.  This claim will be dismissed.

B.   Unlawful Interrogation Techniques

Plaintiff also asserts that he was beaten unconscious during his interrogation in order to procure DNA evidence.  It appears that this evidence was used at trial, as the Court construes the Complaint and Amended Complaint as asserting that this evidence should have been the subject of a motion to suppress.  This Court construes these allegations as an attempt to assert a claim that the circumstances of the interrogation amounted to a violation of Plaintiff's due process rights under the Fourteenth Amendment.

_____

[4] While "[a] false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law[,]" Baker v. McCollan, 443 U.S. 137, 142 (1979), the claim is derivative of a Fourth Amendment violation for arrest without probable cause. See Groman, 47 F.3d at 636.

See, e.g., Chavez v. Martinez, 538 U.S. 760, 780 (2003) (under some circumstances, coercive interrogation alone may violate a suspect's right to substantive due process, even when no self-incriminating statement is used against the person interrogated); County of Sacramento v. Lewis, 523 U.S. 833, 846-47, n.8 (1998) (substantive due process rights are violated only when "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the conscience"); Miller v. Fenton, 474 U.S. 104, 109 (1985) ("certain interrogation techniques, either in isolation or as applied to unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment"); Rochin v. California, 342 U.S. 165 (1952) (due process violated when evidence obtained by subjecting the suspect to an involuntary stomach pump).

In light of Plaintiff's conviction, this Court must first determine whether Plaintiff's due process claim has accrued and, if so, whether it should be stayed or dismissed.  See Wallace v. Kato, 549 U.S. 384, 127 S.Ct. 1091 (2007); Heck v. Humphrey, 512 U.S. 477 (1994).

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court rejected § 1983 as a vehicle to challenge the lawfulness of an extant criminal judgment.

[I]n order to recover damages for allegedly
unconstitutional conviction or imprisonment, or for
other harm caused by actions whose unlawfulness would
render a conviction or sentence invalid, a § 1983
plaintiff must prove that the conviction or sentence
has been reversed on direct appeal, expunged by
executive order, declared invalid by a state tribunal
authorized to make such determination, or called into
question by a federal court's issuance of a writ of
habeas corpus, 28 U.S.C. § 2254.  A claim for damages
bearing that relationship to a conviction or sentence
that has <u>not</u> been so invalidated is not cognizable
under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further

instructed district courts, in determining whether a complaint

states a claim under § 1983, to evaluate whether a favorable

outcome would necessarily imply the invalidity of a criminal

judgment.

Thus, when a state prisoner seeks damages in a § 1983
suit, the district court must consider whether a
judgment in favor of the plaintiff would necessarily
imply the invalidity of his conviction or sentence; if
it would, the complaint must be dismissed unless the
plaintiff can demonstrate that the conviction or
sentence has already been invalidated.  But if the
district court determines that the plaintiff's action,
even if successful, will <u>not</u> demonstrate the invalidity
of any outstanding criminal judgment against the
plaintiff, the action should be allowed to proceed, in
the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court further held that

"a § 1983 cause of action for damages attributable to an

unconstitutional conviction or sentence does not accrue until the

conviction or sentence has been invalidated."  <u>Id.</u> at 489-90.

Specifically addressing, albeit in <u>dicta</u>, whether a § 1983

suit, for damages attributable to an allegedly unreasonable pre-

16

trial search, would lie in advance of a judicial determination of the invalidity of the related conviction, the Supreme Court said,

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction.  Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not <u>necessarily</u> imply that the plaintiff's conviction was unlawful.  In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does <u>not</u> encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

<u>Heck</u>, 512 U.S. at 487 n.7.

More recently, the Supreme Court determined the accrual date of a false arrest claim, where the plaintiff asserted that the accrual date should be deferred under the <u>Heck</u> rule because the false arrest led to a coerced confession which was introduced at his trial, producing his conviction and incarceration.  Rejecting this argument, the Court relied upon the traditional rule of accrual, "the tort cause of action accrues ... when the wrongful act or omission results in damages.  The cause of action accrues even though the full extent of the injury is not then known or predictable."  <u>Wallace v. Kato</u>, 127 S.Ct. at 1097 (citations omitted).

So, here, Plaintiff's cause of action for violation of his due process rights during his interrogation accrued at the time

of the interrogation.  As <u>Wallace</u> further explains, where a plaintiff files a claim challenging pre-trial events, related to rulings that will likely be made in a pending or anticipated criminal trial, it is within the power of the district court to stay the civil action until the criminal case or the likelihood of a criminal case is ended.  "If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, <u>Heck</u> will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit."  <u>Wallace</u>, 127 S.Ct. at 1098 (citations omitted).

Here, it is not apparent at this time that a finding in Plaintiff's favor on the due process claim would impugn his conviction.  That is, it is not apparent at this time that the DNA evidence is the only evidence used to procure Plaintiff's conviction or that the other evidence against Plaintiff would not be sufficient to sustain his conviction.  Accordingly, this claim may proceed as against Defendants Whalen, Earney, and Bishop, only.  If it becomes apparent during the course of the litigation that a finding in Plaintiff's favor on this claim would impugn the validity of Plaintiff's conviction, this Court may revisit the question whether the claim must be dismissed under <u>Heck</u> and its progeny.  The "conspiracy" claim against Defendant Aron is completely unsupported by any factual allegations and will be dismissed.

18

C.   <u>Testimony Before Grand Jury</u>

Plaintiff alleges that Defendant Whalen gave false testimony before the Grand Jury.

Witnesses, including police witnesses, are absolutely immune from civil damages based upon their testimony.  <u>See</u> <u>Briscoe v. LaHue</u>, 460 U.S. 325, 341-46 (1983).  That immunity extends to investigators testifying in a grand jury proceeding.  <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1467 n.16 (3d Cir. 1992).  Accordingly, this claim will be dismissed.

D.   <u>Malicious Prosecution</u>

Plaintiff alleges that the various prosecutorial defendants presented this case to the Grand Jury and continued to prosecute it even though they knew there was no probable cause to believe he had committed the crime.

In order to state a <u>prima facie</u> case for a § 1983 claim of malicious prosecution pursuant to the Fourth Amendment, a plaintiff must establish the elements of the common law tort as it has developed over time, <u>Hilfirty v. Shipman</u>, 91 F.3d 573, 579 (3d Cir. 1996), and that there has been a seizure, <u>Gallo v. City of Philadelphia</u>, 161 F.3d 217, 222 (3d Cir. 1998); <u>Luthe v. Cape May</u>, 49 F. Supp.2d 380, 393 (D.N.J. 1999).  Under New Jersey law, the common law tort elements of a malicious prosecution action arising out of a criminal prosecution are:  (1) the criminal action was instituted by the defendant against the plaintiff,

19

(2) it was actuated by malice, (3) there was an absence of probable cause for the proceeding, and (4) the criminal proceeding was terminated favorably to the plaintiff.  Lind v. Schmid, 67 N.J. 255, 262 (1975).  A plaintiff attempting to state a malicious prosecution claim must also allege that there was "'some deprivation of liberty consistent with the concept of seizure.'"  Gallo, 161 F.3d at 222 (quoting Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995)); see Albright v. Oliver, 510 U.S. 266 (1994).

Here, Plaintiff has alleged no facts that the prosecution was instituted by malice.  Moreover, the criminal proceeding was not terminated favorably to Plaintiff.  He was convicted on at least some of the counts charged.

In addition, the various prosecutors are immune from Plaintiff's claim of malicious prosecution.  "[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983.  Imbler v. Pachtman, 424 U.S. 409, 410 (1976).  Thus, a prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity.  Burns v. Reed, 500 U.S. 478, 492 (1991).  Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur

in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Here, Plaintiff's claims against the prosecutorial defendants arise out of the quintessential prosecutorial functions; thus, the prosecutorial defendants are entitled to absolute immunity.

Finally, in addition to being entitled to absolute prosecutorial immunity, the Camden County Prosecutor's Office is immune from suit in this Court under the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).

Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

To determine whether Eleventh Amendment immunity applies to a state agency, a court must consider three factors:  (1) the source of the agency's funding - i.e., whether payment of any judgment would come from the state's treasury, (2) the status of the agency under state law: and (3) the degree of autonomy from state regulation.  See Flitchik v. New Jersey Transit Rail Operations, 873 F.2d 655, 659 (3d Cir.) (en banc), cert. denied, 493 U.S. 850 (1989).  In Coleman v. Kaye, 87 F.3d 1491 (3d Cir. 1996), the U.S. Court of Appeals for the Third Circuit considered all of these factors in the context of a New Jersey county prosecutor's office and recognized that county prosecutorial offices conduct two distinct sets of functions: (1) the administrative functions of operating their offices and (2) the classic law enforcement and investigative functions for which they are chiefly responsible.  The Third Circuit's analysis culminated in the conclusion that "when [New Jersey county] prosecutors engage in classic law enforcement and investigative functions, they act as officers of the state."  Id. at 1505.

Here, the claims against the Camden County Prosecutor's Office arise out of classic law enforcement functions, and are barred from suit in federal court under the Eleventh Amendment.

E.   <u>Ineffective Assistance of Trial Counsel</u>

Plaintiff alleges that this trial counsel Jill Cohen failed to provide the effective assistance guaranteed by the Sixth Amendment.  Plaintiff does not state whether his trial counsel was a public defender.

An attorney may be entitled to dismissal of a civil rights action on the ground that it fails to state a claim, because lawyers, typically, are not "state actors."  "[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."  <u>Polk County v. Dodson</u>, 454 U.S. 312, 318 (1981).  Similarly, a public defender "does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  <u>Polk Co. v. Dodson</u>, 454 U.S. at 325.  Moreover, court-appointed counsel, public defenders, and investigators employed by a public defender are absolutely immune from civil liability under § 1983 when acting within the scope of their professional duties.  <u>Black v. Bayer</u>, 672 F.2d 309, 317 (3d Cir.), <u>cert. denied</u>, 459 U.S. 916 (1982).  Thus, this claim must be dismissed for failure to state a claim.

In any event, any claim for damages arising out of alleged ineffective assistance of counsel at trial is premature until such time as Plaintiff's conviction is overturned or otherwise

23

invalidated.  <u>See</u> <u>Heck v. Humphrey</u>, 512 U.S. 477, 486 (1994);

<u>Roberts v. Childs</u>, 956 F.Supp. 923, 925 (D.Kan.), <u>aff'd</u>, 125 F.3d

862 (10th Cir. 1997).

F.   <u>Request for Appointment of Counsel</u>

       In a single sentence at the end of the Complaint, Plaintiff

requests appointment of counsel.

       Indigent persons raising civil rights claims have no

absolute constitutional right to counsel.  <u>Parham v. Johnson</u>, 126

F.3d 454, 456-57 (3d Cir. 1997).  In determining whether to

appoint counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must
> have some merit in fact and law. ... If the district
> court determines that the plaintiff's claim has some
> merit, then the district court should consider the
> following factors:
>
>        (1) the plaintiff's ability to present his or her
> own case;
>        (2) the complexity of the legal issues;
>        (3) the degree to which factual investigation will
> be necessary and the ability of the plaintiff to pursue
> such investigation;
>        (4) the amount a case is likely to turn on
> credibility determinations;
>        (5) whether the case will require the testimony of
> expert witnesses;
>        (6) whether the plaintiff can attain and afford
> counsel on his own behalf.
>
> [<u>Tabron v. Grace</u>, 6 F.3d 147, 155-56, 157 n.5 (3d Cir.
> 1993), <u>cert. denied</u>, 510 U.S. 1196 (1994).]  This list
> of factors is not exhaustive, but instead should serve
> as a guide post for the district courts.
>
>        Correspondingly, courts should exercise care in
> appointing counsel because volunteer lawyer time is a
> precious commodity and should not be wasted on
> frivolous cases.  <u>Id.</u> at 157.

Parham, 126 F.3d at 457-58.

In considering the first factor, courts should consider "the plaintiff's education, literacy, prior work experience, and prior litigation experience." Tabron, 6 F.3d at 156.  In addition, courts should consider whether the plaintiff has access to resources such as a typewriter, photocopier, telephone, and computer.  Id.

"Where the legal issues are complex, it will probably serve everyone involved if counsel is appointed." Parham, 126 F.3d at 459 (citing Tabron, 6 F.3d at 156 and Maclin v. Freake, 650 F.2d 885, 889 (7th Cir. 1981) (per curiam) ("[W]here the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis.")).

In considering the ability of a plaintiff to investigate the facts, courts "should be aware that it may be difficult for indigent plaintiffs to understand the complex discovery rules." Parham, 126 F.3d at 460.

In considering the credibility factor, "courts should determine whether the case was solely a swearing contest." Parham, 126 F.3d at 460.

The necessity of an expert witness "weighs heavily in favor of appointment of counsel." Parham, 126 F.3d at 460.  Finally, where other factors weigh in favor of appointment of counsel,

evidence that a plaintiff has made extensive unsuccessful efforts
to obtain counsel weighs heavily in favor of appointment.
Parham, 126 F.3d at 461.

    Analysis of these factors reveals that appointment of
counsel is not appropriate at this time.  As a preliminary
matter, Plaintiff has presented one claim with merit in fact and
in law.  He has made no attempt, however, to address any of the
other factors.  Plaintiff appears able to articulate his claims.
Nothing in the Complaint or Amended Complaint suggest that there
will be any complex legal issues to address or that any expert
witnesses will be required.  Accordingly, the request for
appointment of counsel will be denied without prejudice as
premature.  Plaintiff or this Court may revisit the issue should
circumstances warrant as the litigation progresses.

                         V.   CONCLUSION

    For the reasons set forth above, the Due Process claim
arising out of Plaintiff's interrogation may proceed as against
Defendants Whalen, Earney, and Bishop only.  All claims against
the State of New Jersey and the Camden County Prosecutor's Office
will be dismissed without prejudice under the Eleventh Amendment.
All claims against the prosecutorial defendants and grand jury
witnesses will be dismissed on grounds of immunity.  All
remaining claims will be dismissed, pursuant to 28 U.S.C.

                              26

§§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.

However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to state a claim for false arrest or selective enforcement, the Court will grant Plaintiff leave to file an amended complaint.[5]  An appropriate order follows.


At Camden, New Jersey              /s/ Noel L. Hillman
                                   Noel L. Hillman
                                   United States District Judge

Dated: November 7, 2011

---

[5] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.